IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MONICA MLOCKI,**                                          Case 1:14 CV 2316

       Plaintiff,

       v.                                                  Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.                              MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Monica Mlocki ("Plaintiff") filed a complaint against the Commissioner of Social Security ("Commissioner"), seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The parties consented to the jurisdiction of the undersigned in accordance with 28 U.S.C. § 636(c) and Local Rule 72.2(b)(1). (Doc. 11). For the following reasons, the case is reversed and remanded to the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB in early 2012, alleging an inability to work as of December 2010 due to ulcerative colotis [sic]; fatigue; a bowel infection; and severe arthritis in her fingers, neck, back, and knees. (Tr. 160, 204). Social Security denied the claim initially and upon reconsideration. (Tr. 84, 89). Plaintiff then filed a request for an administrative hearing and on June 19, 2013, an administrative law judge ("ALJ") conducted a hearing. (Tr. 26). Following the hearing, at which Plaintiff, represented by counsel, and a vocational expert ("VE") testified, the ALJ issued an unfavorable decision. (Tr. 26-58, 10). This decision became final when the

Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff now seeks judicial review. (Doc. 1).

FACTUAL AND MEDICAL BACKGROUND

**Personal Background**

Plaintiff's birth date is November 4, 1957, and she was 53 years old on the alleged onset date of disability. (Tr. 160). She has a high school education and past work experience as a messenger, purchasing clerk, warehouse worker, and sorter/tagger. (Tr. 48-53, 205).

**Hearing Testimony**

At the hearing Plaintiff testified she experienced pain in her knees, ankle, lower back, legs, and occasionally in her hands. (Tr. 35). "Physical work" exacerbated her pain. (Tr. 35). She took muscle relaxers and pain medication, which sometimes resulted in exhaustion and fatigue. (Tr. 35). Plaintiff occasionally used a cane, but did not require physical therapy, a back brace, a TENS units, or surgery. (Tr. 36). She reported pain of eight or nine on a ten point scale, but five on a good day. (Tr. 36-37). She estimated she could walk for fifteen or twenty minutes at a time, stand for ten minute intervals, sit for thirty to sixty minutes, and lift approximately five or six pounds. (Tr. 37-38). She also testified to an inability to bend, stoop, or squat. (Tr. 37).

She had problems with her nerves and memory, but was not seeing a psychiatrist or psychologist for mental health issues. (Tr. 38). She had difficulty following television programs, and disliked large crowds. (Tr. 38-39). Plaintiff could shower and dress independently, but required some help from her sons with household chores. (Tr. 40-41).

The VE opined that a hypothetical person of similar age and education as Plaintiff with a limitation to sedentary work, and additional exertional limitations—including avoiding climbing ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping,

2

kneeling, crouching, and crawling; avoidance of exposure to hazards, including heights, machinery, and commercial driving—could not perform any of her past jobs except the purchasing clerk. (Tr. 53-54). The VE noted the position of purchasing clerk was sedentary, semi-skilled work. (Tr. 54). The VE also opined the hypothetical person could not perform jobs existing in significant numbers in the economy if she was off-task at least twenty percent of the time. (Tr. 54).

## ALJ Decision

On July 9, 2013, the ALJ issued an unfavorable decision. (Tr. 10). The ALJ determined Plaintiff had the following severe impairments: degenerative arthritis of knees and hips, a history of colitis, and status post stress fracture of ankle. (Tr. 15). She did not, however, meet the requirements of an impairment listed in 20 CFR Part 404, Subpart P, Appendix. (Tr. 15).

The ALJ ultimately determined Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she could not climb ladders, ropes, or scaffolds; only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl; and could not have exposure to hazards (heights, machinery, or commercial driving). (Tr. 15). The ALJ opined Plaintiff had the ability to perform her past job as a purchasing clerk, which was not precluded despite his RFC finding. (Tr. 17).

## Relevant Physical Medical Evidence

In May 2010, Plaintiff presented to Mark Panigutti, MD for an evaluation of her left knee pain. (Tr. 261). The treatment notes revealed Plaintiff had arthroscopic surgery in 2008. *Id.* An examination revealed mild patellofemoral facet tenderness, no effusion, no instability, and good motion except a small flexion contracture. *Id.* He opined her pain resulted from a flare-up of degenerative joint disease, and recommended stretching and cortisone injections. *Id.*

In July 2010, Plaintiff received cortisone injections and gel shots in her left knee. (Tr. 262, 264-65). Upon examination, Dr. Panigutti noted the following: Plaintiff did not have significant loss of sensation; she had full motor and sensory function of ankle, toes, and knee; she had a negative straight leg and 2+ pulses and full sensation. (Tr. 262). After the unremarkable exam, however, he noted she had "significant [degenerative joint disease]". *Id.*

A colonoscopy performed in August 2010 revealed unremarkable and normal results. (Tr. 254). The following month, Plaintiff complained of significant hip pain, yet x-rays revealed mild degenerative changes. (Tr. 266-67). In November, she reported left ankle pain, and x-rays revealed "[n]o significant plain film abnormality, except for diffuse soft tissue swelling." (Tr. 319, 268). The following month she presented to Dr. Panigutti with complaints of ankle pain. (Tr. 269). An examination revealed tenderness over the fibula, mild to moderate swelling, an intact Achilles tendon, non-tender midfoot and medially, negative Homans, no calf tenderness, and full motor and sensory function distally. (Tr. 269). X-rays revealed indications of a stress fracture and Dr. Panigutti recommended a cast boot and crutches. (Tr. 269-70).

In February 2011, Plaintiff returned to Dr. Panigutti complaining of all over pain and appeared to be "pretty focused on pain meds." (Tr. 273). He noted she had a negative Homans, good motion, no tenderness, and x-rays showing a healed stress fracture with no other significant abnormality. (Tr. 273-74). Dr. Panigutti noted Plaintiff's "vague complaints" and recommended physical therapy. (Tr. 273)

The following month she was treated for knee pain, again by Dr. Panigutti. (Tr. 276). Upon examination, Plaintiff had a full range of motion, but x-rays revealed advanced degenerative changes laterally on the left and moderately on the right. (Tr. 276-77). He treated

her with a cortisone injection. (Tr. 276). In May 2011, Plaintiff complained of increased pain in her knees; Dr. Panigutti treated her with a series of gel shots. (Tr. 278-81).

Plaintiff presented to Stanley Ballou, MD in December 2011 for treatment of pain in her hands and elsewhere. (Tr. 285). She reported pain, intermittent swelling, and morning stiffness in her hands for five years. *Id.* She also complained of chronic pain in her neck and low back for twenty years, and increased pain in both knees for ten years. *Id.* Dr. Ballou noted Plaintiff ambulated without difficulty; had a full range of motion in her shoulders and hips; and had a mild reduced range of motion in her neck and lower back. *Id.* Her knees showed moderate crepitus and valgus deviation, but no warmth or effusion. *Id.* He opined the arthralgias in her hands, and possibly in her neck and lumbar spine, could have been consistent with inflammatory bowel disease associated arthropathy, as opposed to rheumatoid arthritis. *Id.*

Plaintiff saw Dr. Ballou again in February 2012 for treatment of pain in her neck, low back, hands, and knees. (Tr. 282). She reported pain most of the day, sometimes awakening her at night. *Id.* Dr. Ballou noted Plaintiff ambulated slowly with evidence of valgus deviation of both knees with ambulation. *Id.* He also noted no inflammatory synovitis in her hands, a slightly reduced range of motion in the cervical spine, bogginess with possible small effusions, valgus deviation, and marked crepitus in her knees. *Id.* Dr. Ballou opined medication stabilized Plaintiff's arthralgias and ulcerative colitis, but she had progressive osteoarthritis of both knees. (Tr. 282-83). He recommended gel injections for her knees, which were "quite helpful when last provided [two] years ago." (Tr. 283).

Sara Lohser, MD, a consulting physician, examined Plaintiff in June 2012 and noted Plaintiff's ability to perform activities of daily living without difficulty, and her ability to rise from the exam table numerous times without difficulty or assistance. (Tr. 336-37). Plaintiff

5

reported her history of arthritis and ulcerative colitis was well-controlled with medication. (Tr. 335). X-rays of Plaintiff's hands revealed results that were within normal limits. (Tr. 337). Dr. Lohser ultimately opined Plaintiff did not have any substantial physical limitations that would cause her to be precluded from functioning in the workplace. (Tr. 336). Dr. Lohser noted, "[h]er medical conditions seem well[-]controlled on her current medications and there are no acute symptoms that would suggest otherwise." *Id.[1]*

In July 2012, state agency physician William Bolz, MD reviewed Plaintiff's file and determined Plaintiff's statements regarding her symptoms were partially credible. (Tr. 67). He opined she could occasionally lift and/or carry up to twenty pounds and ten pounds frequently; stand and/or walk for about six hours in an eight hour workday; sit for a total of about six hours in an eight hour workday; push and/or pull without limitation, except as otherwise stated; climb ramps/stairs frequently; climb ladders/ropes/scaffolds occasionally; balance and stoop without limitation; kneel, crouch, and crawl occasionally; had postural limitations due to osteoarthrosis in her knees; and should avoid even moderate exposure to hazards. (Tr. 67-69). State agency physician Lynne Torello, MD reviewed the file and affirmed Dr. Bolz's assessment. (Tr. 80-81).

Plaintiff presented to the emergency room in November 2012 complaining of knee pain following a motor vehicle accident. (Tr. 347). X-rays revealed bilateral degenerative changes with osteophytes and a suspected left effusion. (Tr. 343). The doctor opined Plaintiff suffered from advanced arthritis in both knees. (Tr. 345, 349).

Dr. Ballou completed a medical source statement regarding Plaintiff's physical capacity in June 2013. (Tr. 370). He opined Plaintiff could occasionally lift/carry ten pounds and five pounds frequently; stand/walk for one hour in an eight hour workday, but only for fifteen

---

1. The consulting state agency physician rejected this opinion, as did the ALJ. (Tr. 16-17, 80).

minutes at a time without interruption; and rarely climb, balance, stoop, crouch, kneel, or crawl. (Tr. 370). He also opined that sitting was not affected by her impairments, but then noted "prolonged sitting not good". (Tr. 370). He did not test Plaintiff's ability to reach, push/pull, or manipulate. (Tr. 371). He also wrote a question mark in the box reserved for the evaluation of environmental restrictions. *Id.* He noted Plaintiff had not been prescribed a cane, walker, brace, TENS unit, or wheelchair. *Id.* Dr. Ballou opined Plaintiff experienced moderate pain and probably required an additional two hours of unscheduled rest periods during an eight hour workday. *Id.* Finally, he wrote a question mark in the boxes regarding the need for leg elevation; and whether Plaintiff's pain interfered with concentration, caused her to be off-task, or resulted in absenteeism. *Id.*

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

7

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1.  Was claimant engaged in a substantial gainful activity?

2.  Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3.  Does the severe impairment meet one of the listed impairments?

4.  What is claimant's RFC and can claimant perform past relevant work?

5.  Can claimant do any other work considering her RFC, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The court considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff asserts the ALJ erred by (1) rejecting the opinion of treating physician, Dr. Ballou, and (2) conducting an improper pain analysis. The Court addresses each of these asserted assignments of error in turn, and ultimately, finds merit in both.

**Treating Physician Rule**

Plaintiff argues the ALJ committed error when he rejected the RFC assessment of treating physician, Dr. Ballou. (Doc. 13, at 7). Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1502. A medical provider is not considered a treating source if the claimant's relationship with them is based solely on the claimant's need to obtain a report in support of their claim for disability. *Id.*

Generally, medical opinions of treating physicians are accorded greater deference than non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242; see 20 C.F.R. § 416.927(c)(2). A treating physician's opinion is given "controlling weight" if it is supported by: 1) medically acceptable clinical and laboratory diagnostic techniques; and 2) is not inconsistent with other substantial evidence in the case record. *Id*. (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).

When a treating physician's opinion does not meet these criteria, an ALJ must weigh medical opinions in the record based on certain factors. 20 C.F.R. § 416.927(c)(2). In determining how much weight to afford a particular opinion, an ALJ must consider: (1) examining relationship; (2) treatment relationship—length, frequency, nature and extent; (3) supportability—the extent to which a physician supports his findings with medical signs and laboratory findings; (4) consistency of the opinion with the record as a whole; and (5) specialization. § 416.927(c)(2)-(6); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010).

Importantly, the ALJ must give "good reasons" for the weight he gives a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242. An ALJ's reasoning may be brief, *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009), but failure to provide any reasoning requires remand. *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409-10 (6th Cir. 2009).

Here, there is no question that Dr. Ballou qualifies as a treating source and the Commissioner does not argue otherwise. The ALJ rejected the opinion of Dr. Ballou because it was "incomplete and [] unsupported by the medical evidence." (Tr. 17). In the entirety of his opinion, the ALJ wrote one short three-sentence paragraph regarding Dr. Ballou.

> The undersigned is aware that there is a patient's physical capacity report completed by a Dr. Ballon [sic] (Ex. 16F). He opined that the claimant could lift [ten] pounds occasionally, walk [one] hour per workday, did not report how many hours she could sit, he did not test the claimant's manipulative abilities, and he offered no opinion as to the claimant's ability to be exposed to unprotected heights or dangerous machinery (Ex. 16F). The undersigned rejects this opinion as incomplete and as unsupported by the medical evidence.

*Id.*

10

The ALJ failed, however, to provide any explanation as to why he discredited the incomplete opinion in its entirety. Further, the ALJ did not provide any explanation as to why the opinion was unsupported by the medical evidence. He did not address any treatment records from Dr. Ballou, which, the record reveals, consisted of treatment for osteoarthritis in Plaintiff's knees. The ALJ, therefore, failed to explain why the physical limitations set forth by a treating physician were not supported by the record.

The Court remands this case for the ALJ to address the treatment records from Dr. Ballou and to explain the reasons for discrediting his entire opinion as incomplete and unsupported by the medical evidence. Because the weight assigned to Dr. Ballou's opinion could potentially affect the award of benefits, this issue must be remanded so that the ALJ can provide sufficient "good reasons" for the disqualification of Dr. Ballou's opinion.

**Pain Analysis**

The Court next turns to Plaintiff's assertion that the ALJ failed by not making a proper pain analysis; specifically, that he did not perform the second step of the pain analysis by failing to take into consideration the knee injections Plaintiff received or her prescribed pain medications. (Doc. 13, at 10-11).

The Sixth Circuit recognizes that pain alone may be disabling. *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984). However, an ALJ is not required to accept a claimant's own testimony regarding her pain. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529; *see also* Social Security Ruling (SSR) 96-7p, 1996 WL 374186. For pain or other subjective complaints to be considered disabling there must be: 1) objective medical evidence of an underlying medical condition; and 2) objective medical evidence that confirms the severity of

11

the alleged disabling pain, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *Felisky v. Bowen*, 35 F.3d 1027, 1038 (6th Cir. 1994). This standard does not require "objective evidence of the pain itself." *Duncan v. Sec'y of Health & Human Servs*, 801 F.2d 847, 853 (6th Cir. 1986).

The ALJ is to consider certain factors in determining whether a claimant has disabling pain: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; and 6) any measures used to relieve pain. 20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40. An ALJ is not required, however, to discuss each factor in every case. *See Bowman v. Chater*, 1997 WL 764419, at *4 (6th Cir. 1997); *Caley v. Astrue*, 2012 WL 1970250, *13 (N.D. Ohio 2012).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence". *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ stated "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements

12

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (Tr. 16).

Plaintiff asserts that the ALJ's decision lacks an evaluation at the second step because he failed to discuss the intensity, persistence, and limiting effects of Plaintiff's symptoms on her ability to work. Pursuant to Social Security Ruling 96-7p, 1996 SSR LEXIS 4,

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. . . . This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well-reasoned determination or decision.

In regard to his pain credibility assessment, the ALJ stated the following:

> As to her credibility, her own physician, Dr. Panigutti, commented on the claimant's 'vague complaints' (Ex. 2F page 14). The records also document her less than full compliance with her treatment (Ex. 5F). . . . In giving additional credibility to the claimant's subjective complaints of pain, due to her advanced degenerative changes in her knees, the undersigned limits the claimant to sedentary work, with the limitations cited above.

(Tr. 17). The issue is whether these statements regarding Plaintiff's credibility are sufficient to satisfy the second step of the pain analysis.

Plaintiff asserts the statements are insufficient because the ALJ did not take into consideration the knee injections she received or the pain medication she was prescribed. While an ALJ is not required to discuss each factor in every case, he is required to state "specific reasons" that are "sufficiently specific" to explain the weight he assigned to a claimant's statements and the reasons for that weight. SSR 96-7. "The reasons for the credibility finding must be grounded in the evidence and *articulated* in the determination or decision." SSR 96-7p, 1996 SSR LEXIS 4 (emphasis added).

13

Here, the ALJ did not discuss *any* of the factors, and only briefly suggested that Plaintiff's "vague complaints" and "less than full compliance with her treatment" diminished her credibility. (Tr. 16); *see Goins v. Astrue*, 2011 U.S. Dist. LEXIS 94062, at *21 (recommending remanding the pain analysis where the ALJ "referred to only one of the other relevant SSR 96-7p, 1996 SSR LEXIS 4 factors to support his credibility finding.") (adopted and remanded by *Goins v. Astrue*, 2011 U.S. Dist. LEXIS 94031). The Court, therefore, finds merit in the Plaintiff's assertion and remands this issue for a sufficient assessment of Plaintiff's pain.

## CONCLUSION

Following a review of the arguments presented, the record, and the applicable law, the Court reverses and remands this case to the Commissioner to provide "good reasons" for the rejection of a treating physician's opinion and to provide a sufficient pain analysis.


IT IS SO ORDERED.


                                                        s/James R. Knepp II
                                                        United States Magistrate Judge